# REPORTS OF CASES

## DETERMINED IN

# THE SUPREME COURT,

## OCTOBER TERM, 1860.

17   11
e148  75

---

### BRODIE v. CAMPBELL.

THE full term of office of Judge Norton, of the Twelfth District Court, commenced with his qualification, January 2d, 1855, and expired six years thereafter; and the only election at which his successor could be elected was the general election in November, 1860.

The Act of May 15th, 1854, creating the Twelfth Judicial District, is merely amendatory of the Act of May 19th, 1853, and not independent of the general provisions of this latter act. The Act of 1854 must be construed in connection with the original Act of 1853, as much so as if it constituted from the day of its passage a part of that act; and by the fourteenth section of that act, Judge Norton, as the appointee of the Governor under the Act of 1854, was entitled to hold office until the election and qualification of his successor.

It is competent for the Legislature to provide for filling the office of District Judge during the interval between the day of election and the qualification of his successor, by authorizing him to hold until such successor be elected and qualified.

Although the right to an office is derived by election from the people, it is competent for the Legislature to render the enjoyment of the right dependent upon various conditions, as to the ascertaining of the result of the election, the issuing of the commission, and the qualification of the officer.

Where the statute does not fix the commencement of the term of a District Judge, by the designation of a day certain, but requires a commission to issue to him, and his oath of office to be indorsed thereon, and leaves its issuance to the Governor without prescribing the period within which this shall take place,

Brodie *v.* Campbell.

Courts will look to the qualification of the officer to ascertain the date at which his term begins.

The presumption is, that the Governor will issue the commission within a reasonable time; and the Constitution appears to have contemplated the first of January as the proper date at which District Judges, elected after the first legislative appointment, should enter upon their duties, and the general Acts of 1851 and 1853, concerning Courts of Justice and judicial officers, designate that date as the commencement of their terms, thus indicating, as it seems, the period between the election in the fall and January succeeding as a reasonable period within which the requisite proceedings for the ascertainment of the result of the election and the issuance of the commission should take place.

There is no conflict between the Act of 1854 and the Act of 1853, and this latter act is general in its application. The Act of 1854 is silent as to the time when the Judge elected at the general election should enter on his office. The mere designation of the time of the election, and the provision in the act that the appointee of the Governor should hold until the election, do not necessarily restrict the holding to the day of election, when it is considered that there existed at the time a general act providing for the extension of the holding to the qualification of the successor.

Any other construction would leave an *interregnum* in the office between the election and the qualification of the successor, and this could not have been designed by the Legislature.

As the statute has not in this case provided for the issuing of a commission or the qualification of the successor at any given time, the date of the qualification here—January 2d, 1855, the successor being elected in September previous—will be considered *prima facie* a reasonable time within which to qualify—particularly as the period taken seems to be in analogy to the time fixed by the Legislature in other instances for the commencement of the terms of Judges elected at the general election.

It is not held in this case that a person appointed to a vacancy may delay to qualify as long as he chooses after his regular election, and then fix his regular term from the act of qualification ; nor that the Governor could defer signing the commission for as long a term as he chose—but simply that, in cases like this, the new term commences with the qualification, provided the qualification be within a reasonable time.

APPEAL from the Fourth District.

The facts are that the Twelfth Judicial District was created by Act of May 15th, 1854, under which the Governor was to appoint and commission some competent person as Judge of the District, to hold office "till the next general election, when a Judge shall be elected by the qualified electors of the District." May 24th, 1854, the Governor appointed and commissioned as Judge of the District, Edward Norton, who, on the twenty-sixth of that

month, took the oath of office, which was indorsed on the back thereof, and entered upon the discharge of his duties as such Judge.

The first general election after the Act of May 15th, 1854, was September 6th, 1854, at which time Judge Norton was duly elected by the people as Judge of said District, and in the same month received from the County Clerk of San Francisco county a certificate of his election. The same Clerk, on the third of October, 1854, transmitted to the Secretary of the State the proper statement of the vote at such election. December 26th, 1854, the Governor issued a commission to Judge Norton as Judge of said District, it being recited therein that " said Norton was, on the sixth day of September, 1854, duly elected District Judge of the 12th Judicial District," and the term of office mentioned in said commission being the " term prescribed by law." January 2nd, 1855, Judge Norton took his oath of office, and the same was indorsed on the commission.

From May 26th, 1854, to the present time, Judge Norton has acted as the sole Judge of said Twelfth District, drawn his salary regularly, including the months of September, October, November and December, 1854.

At the general election on the seventh of September, 1859, plaintiff, Brodie, received the majority of the votes cast for Judge of the Twelfth District—the vote being full and there being three candidates voted for—though the proclamation issued by the Governor for the election of that year did not name that as one of the offices to be filled. September 29th, 1859, Brodie received from the Clerk of San Francisco county a certificate of his election, and on the third of October following took the oath of office, and a statement thereof was duly transmitted to the Secretary of State. The Governor refused to issue a commission to Brodie.

At the general election, November 6th, 1860, in the proclamation for which the office of Judge of the Twelfth District was included, defendant Campbell received the majority of votes; the certificate of the Clerk to that effect was delivered to him December 7th, 1860, and a statement of the result of the election transmitted to the Secretary of State, after which, December 13th, the

Governor issued to Campbell a commission as Judge of said District, who took the oath of office and had it indorsed on the commission.

The Court below held that the general election in September, 1859, was not the proper time to elect a Judge of the Twelfth District, and that plaintiff, Brodie, took nothing by his election at that time, but that defendant Campbell, being elected in 1860, was entitled to the office.

Plaintiff appeals.

*Crockett & Crittenden*, for Appellant.

I. Under his appointment by the Governor, Judge Norton held, and could hold, his office only until the seventh of September, 1854, the day of the next general election after the passage of the act creating the Twelfth District.   Such is the express provision of the act.   (Acts of 1854, 178.)

If there were any room for doubt on this point, it would be so construed.   (*People* v. *Fitch*, 1 Cal. 536 ; *Gorham* v. *Campbell*, 2 Id. 137 ; *People ex rel. Ryder* v. *Mizner*, 7 Id. 519.)   It has been expressly so held by this Court in a similar case.   (*People ex rel. Barbour* v. *Mott*, 3 Cal. 502.)

A different rule has been prescribed in respect to other newly created districts.   (Acts 1859, 4.)   Though it may be doubted whether the provision of this last named act is not liable to constitutional objections.   (Const. art. 5, sec. 8.)

II. Judge Norton's term of office under his election commenced on the day of election, the seventh of September, 1854, or at least so soon as the result of the election was ascertained and declared.

The Constitution fixes the tenure or term of office of District Judges at six years, but does not fix the commencement of the term.   That must be declared by the Legislature.   (*People ex rel. Brodie* v. *Weller*, 11 Cal. 77 ; *People* v. *Burbank*, 12 Id. 378 ; *People ex rel. Fox* v. *Templeton*, Id. 394 ; *Westbrook* v. *Roseborough*, 14 Cal. 180.)

The act creating the office, naming no other day on which the term is to commence, it must of necessity commence immediately

Brodie *v.* Campbell.

upon the election. (*State of Ohio* v. *Constable*, 7 Ohio, 11; *People ex rel. Fox* v. *Templeton*, 12 Cal. 394; *Westbrook* v. *Roseborough*, 14 Id. 180; *Turner* v. *Meloney*, 13 Id. 621; *Hughes* v. *Buckingham*, 5 Sm. & M. 632; *People ex rel. Harris* v. *Brenham*, 3 Cal. 477.) The commencement of the term cannot be dependent on the date of the commission.

It is the fact of the election which gives title to the office. The commission is merely *prima facie* evidence of the title. (*Magee* v. *Board of Supervisors of Calaveras County*, 10 Cal. 376; *People* v. *Burbank*, 12 Id. 378; *People ex rel. Harris* v. *Brenham*, 3 Id. 477; *Turner* v. *Melony*, 13 Id. 621; *Wammack* v. *Holloway*, 2 Ala. [N. S.] 33.)

If this Court should now hold that Brodie was entitled to the office, and upon that decision a commission should be issued to him, would not his term be held to have commenced at a date long prior to that of his commission?

Under the decision of this Court in *People* v. *Burbank*, Judge Hager is now in office without any commission.

To make the commencement of the term depend on the issuing of a commission, would be to substitute the will of the Governor for the law, and give to the Governor power to alter the tenure of the office, for the person elected may discharge the functions of his office without any commission. But this Court has held that the commission cannot change the tenure of the office. (*People* v. *Burbank*, 12 Cal. 378.)

Nor can it be dependent upon the taking of the oath of office. The provisions of the statute on that point are only directory. (*State* v. *Findly*, 10 Ohio, 59; *State* v. *Neibling*, 6 Id. 40; *People ex rel. Harris* v. *Brenham*, 3 Cal. 477.) The provision of the law itself shows that the term is not dependent on the oath, for the oath is to be taken after the term has commenced. It cannot be taken by a Judge until after he has received his commission, for it must be indorsed on the commission, and to hold the oath a prerequisite to entry into the office, would be to make the commission essential to the title—indeed, the title to the office itself. (Wood's Dig. 559.)

And this is still more clear from the act " concerning offices," (Wood's Dig. 559, sec. 30) which provides that the office shall become vacant upon the failure or refusal to take the oath within the time prescribed. How can it become vacant unless the officer was before in office ? Some act, indeed, on the part of the person elected, is essential as evidence of acceptance of the office. In the present case that act, on the part of Judge Norton, was most unequivocal in character. He exercised the powers of the office from the day of his election. He did this rightfully in virtue of his election.

His commission was issued in December, 1854, and he took the oath on the second of January, 1855, within ten days after its date, and of course within the ten days after it was received as required by law.

He was in no default in respect to qualifying, but the period when he could qualify might have been as well delayed by the Governor for years as for months, and thus the Governor could have extended his term for years.

III. If Judge Norton's term commenced on the seventh of September, 1854, it expired on the seventh of September, 1860. If it commenced even when the result of the election was declared and he received his certificate, his term expired before November, 1860, and under the law an election was properly held to fill the vacancy in 1860. (Wood's Dig. 375, sec. 4.) And no proclamation of the Governor was necessary to make such election valid. (*People ex rel. Harris* v. *Brenham,* 3 Cal. 477 ; *Westbrook* v. *Roseborough,* 14 Id. 180.)

*Casserly & Lake,* for Respondent.

I. The term of Judge Norton, by appointment of the Governor, ended, and his term of six years began, on the day (Jan. 2d, 1855) when he qualified by taking and subscribing the oath of office on the back of his commission. (Act of 1854 creating the Twelfth District Court.)

Compare this special act with the general acts in *pari materia,* as Act of 1853 (Judiciary Act, etc.) secs. 15, 16. This section

Brodie *v.* Campbell.

fifteen is in accordance with and by virtue of the general power over the whole subject granted by the Constitution, art. 6, sec. 5.

II. Until Judge Norton had qualified in the manner just stated, his full term did not and could not begin to run, for the reason that until he had so qualified the term granted by the Governor's appointment had not expired, (Act of 1853, sec. 15) and there could not of course be two terms of the same office running at the same time; and for the further reason, that until he had so qualified the law forbade him to enter upon the office under the full term. (Act of 1851 concerning officers, etc., secs. 23, 24; Wood's Dig. 559; Act of 1853, Judiciary act, sec. 16; Wood's Dig. 150.)

And compare Act of 1850, (general election law) secs. 44, 41, 39. (Wood's Dig. 379, 378.)

III. The right to the office of District Judge of the Twelfth District for the full term, was derived by Judge Norton from his election by the people in September, 1854. But this right was undoubtedly subject to such conditions as to the mode and time of ascertaining the result, the issuing of his commission and his qualification, as the Legislature may have seen fit to impose.

Until these conditions were satisfied—there being no default on his part, since he took the oath upon his commission within the ten days limited by law, after his receipt of it (Wood's Dig. 559, sec. 28)—his right to the office was not complete, and his term would not begin to run.

IV. His assumption of the office, January 2nd, 1855, was in accordance with the general, constitutional and statutory policy of the State, which seems to have fixed the first of January for the commencement of the term of District Judges respectively. (Const. art. 6, sec. 5; Act of 1851, 12, sec. 18, Comp. Laws, 241; Act of 1853, Comp. Laws, 740–1; Act of 1860, Laws of 1860.)

V. The full term of Judge Norton having commenced January, 1855, will not terminate until January 1st, 1861. Consequently the general election of November, 1860, under which the respondent, Campbell, claims, was the only one at which by law a successor to Norton could be elected; and the election of September,

1859, under which the appellant, Brodie, claims, was premature and null.    (Act of 1860; *Brodie* v. *Weller*, 11 Cal. 77, 87, 88.)

FIELD, C. J. delivered the following opinion:

This is a contest for the office of District Judge of the Twelfth Judicial District, and is presented upon an agreed statement of facts between the parties, under the statute.    Both contestants claim to have been elected as successors of the present incumbent— Brodie at the general election in 1859, and Campbell at the general election of the present year.

The Twelfth Judicial District was created by an Act of the Legislature of May 15th, 1854, entitled " an Act amendatory of and supplementary to an Act entitled an Act concerning the Courts of Justice of this State, and Judicial Officers, passed May 19th, 1853." The Act of 1853, referred to, recognizes the division of the State, existing at the time of its passage, into eleven judicial districts. That division was made by the Act of March, 1851, bearing the same title.    Both Acts, that of 1851 and that of 1853, contemplate that District Judges elected by the people after a designated period shall take their respective offices on the first day of January subsequent to their election.    (Session Laws of 1851, ch. 1, sec. 18; Ibid of 1853, ch. 180, sec. 14.)    Both provide that in case of a vacancy, from any cause, in the office of District Judge, the Governor shall fill the same by granting a commission, which shall continue until the election and qualification of a Judge in his place; and that a Judge to fill such vacancy shall be chosen at the first general election subsequent to its occurrence.    (Sec. 19 in Act of 1851, and sec. 15 in Act of 1853.)    The Act of 1854 is not independent of the general provisions of the Act of 1853.    It is, as it purports in its title, merely amendatory of and supplementary to the general act.    It amends that act only in the section designating the number of Judicial Districts into which the State shall be divided, and it adds to it only by declaring that the jurisdiction of the new District Court shall be coëxtensive with that of the Fourth District, by fixing the terms of the Court and the salary

Brodie v. Campbell.

of its Judge, and by authorizing the Governor to make a temporary appointment for the office.   It is to be construed in connection with the original act, as much so as if it constituted from the day of its passage a part of that act.   The new Court once created, and the new Judge once appointed, were brought within the operation of the provisions of the general act.   By the fourteenth section of that act, the appointee of the Governor—Judge Norton—was authorized to hold until the election and qualification of his successor.   It was competent for the Legislature to thus provide for filling the office for the interval between the day of the election and the qualification of the new Judge, so as to prevent delays and embarrassment in the administration of justice.   The question for determination is this: When did the term of the successor elected commence?   The statute did not name the day; it only authorized the appointee to hold until his successor qualified.   In the present case, the successor was the same person as the appointee, Judge Norton having been elected for the full term.   On the twenty-sixth of December, 1854, the Governor issued to him a commission for that term, and on the second day of January, 1855, he qualified thereunder.   His full term must be deemed, therefore, to have commenced with his qualification—he having qualified within the time prescribed by law after the receipt of his commission.   A different rule would prevail if the law had fixed the commencement of the term by the designation of a day certain; in that case the issuance of the commission and the time of the qualification would conclude nothing as to the term.   But not so where the commencement must depend upon certain preliminary proceedings to be taken by different officers.   A new Judge cannot enter upon the discharge of his duties until the fact of his election is in some way officially determined, and authentic evidence of it furnished to him.   For this purpose the law prescribes certain steps—following each other in regular order.   The returns of the election are to be made from the different precincts to the County Clerk.   After a certain interval, these returns are to be opened and the votes counted.   A statement of the votes of the district is then to be prepared, properly authenticated, and forwarded to the Secretary of State.   Upon

this statement the Governor is to issue his commission, and within ten days after its receipt the person elected is to take and subscribe the oath of office. The Constitution requires this oath to be taken and subscribed before the officer can enter upon the discharge of his duties (Art. XI., sec. 3); and the statute requires the oath to be indorsed upon his commission. (Act concerning Offices, secs. 23 and 24.) The statute does not prescribe the period within which the Secretary of State shall inform the Governor of the filing of the statement, or the Governor shall issue the commission after receiving the information. It is to be presumed that both of these officers will act in the matter within a reasonable period consistent with their other duties. Various causes may arise creating delay in acting. Inaccuracies or informalities in the statement, or in its return ; doubts as to the law applicable to the case ; and reference to the Attorney General for his opinion thereon, with other reasons, may serve to retard the issuance of a commission. Into these matters the Courts will not minutely inquire. It is sufficient for them, in determining the commencement of any particular term of office, where that is not fixed by the designation of a day certain, that the statute requires a commission to issue to the officer, and his oath of office to be indorsed thereon, and leaves its issuance to the Governor without prescribing the period within which this shall take place. In such case we must look to the qualification of the officer to ascertain the date at which his term begins. The electors who are to vote for the successor of such officer will be at loss to determine when that officer's term expires, if they are required to look beyond the commission, and the ten days prescribed by law for qualification thereunder. The record in the office of the Secretary of State will show when the commission issued, and upon that record the Governor will be presumed to act, as he did in the present case, when notifying the public by his proclamation of the offices to be filled at any given election.

Though it is true the right to an office is derived by election from the people, it is undoubtedly competent for the Legislature to render the enjoyment of the right dependent upon various conditions as to the ascertainment of the result of the election, the issuing of

a commission and the qualification of the officer.   When these conditions are imposed, the right to enter upon and enjoy, in other words, to hold the office, is not complete until they are satisfied. Until then, the term of the officer cannot begin to run.   But it is said that this view places it in the power of the Governor to prolong indefinitely the period at which the incumbent shall cease to act, and the person elected shall enter upon the enjoyment of the right given by the people.   If this were so, it would not affect our conclusion; it is the common objection that a power conferred may be abused.   It hardly need be said that its liability to abuse is no argument against the existence of a power, however much this might be urged against the policy of originally ·bestowing it. We are not to reason in such cases upon the possibility of the abuse, but rather upon the presumption that the officers of the Government will do their duty, and not exercise the power with which they are clothed in an unreasonable and arbitrary manner.   For the abuse of power by public functionaries, there is generally found in the resources of the law ample remedies; or those failing, a resort can be had to the Legislature.

In the case under consideration, we do not perceive that there was any abuse of power on the part of the Governor, or that the commission to Judge Norton for his full term was unreasonably delayed.   The Constitution appears to have contemplated the first of January as the proper date at which District Judges elected after the first legislative appointment should enter upon their duties, and the legislation of the State, with reference to the Judges of the other Districts existing at the time of the creation of the Twelfth District, had expressly fixed that date as the commencement of their terms.   The period intervening between the election and that date would thus seem to be indicated as the reasonable period, within which the requisite proceedings for the ascertainment of the result of the election, and the issuing of the commission should take place.   Be, however, this as it may; our conclusion for the other reasons stated is, that the full term of Judge Norton commenced with his qualification, and will not expire until January, 1861.   The general election, therefore, which took place in November of the

---

Brodie *v.* Campbell.

---

present year, was the only one at which his successor could be elected. At that time, the respondent Campbell was elected. He is, therefore, entitled to the office for the full term succeeding the term of the present incumbent.

Judgment affirmed.

BALDWIN, J. filed the following opinion, COPE, J. concurring.

I concur in the opinion of the Chief Justice. I think that the Act of 1854 is to be taken in connection with the general statute of 1853, which provides, in effect, that the appointee shall hold until his successor is qualified. The Act of 1854 provides that the Governor shall appoint some competent person as Judge of the Twelfth District, established by that act, who shall hold office until the next general election, when a Judge shall be elected by the people. There is no necessary conflict between this act and the general Act of 1853. The last named act was intended to be general in its application. The Act of 1854 is silent as to the time when the Judge elected at the general election should take office. The mere designation of the time of the election, and the provision that the appointee should hold until the election, do not necessarily restrict the holding to the day of election, when we consider that a general act on the same subject exists, providing for the extension of the holding to the qualification of the successor. To work a repeal, the last act must be directly and irreconcilably inconsistent with the first; that is, reading both acts together, effect cannot be given to both. But effect can, in this matter, be given to both. The consequence of the construction contended for by appellant would be to leave an *interregnum* in this important office, which we cannot suppose was designed by the Legislature.

It follows, that, giving effect to the Act of 1853, Judge Norton held, and was entitled to hold, under his appointment until the person elected in September qualified. Norton was chosen at that election. But his term commenced under that election with his qualification. It is unreasonable to suppose that the Legislature designed to fix the commencement of the term at an earlier period than that at which the incumbent could enter upon the office. Some time

must necessarily elapse before the person elected could get his commission, and be ready to qualify.   This period was, in the nature of things, indefinite, and a variety of causes might delay or accelerate it.   The statute has not provided for the issuing of a commission, or the qualification of the successor in such cases at any given time. *Prima facie* the date of this qualification must be considered a reasonable time to qualify; and the period here taken seems to be in analogy to the time fixed by the Legislature in other instances for the commencement of the terms of Judges chosen at the general election.   We do not mean to say that a person appointed to a vacancy may delay to qualify as long as he chooses, and then fix his regular term from the act of qualification; for that would be to perpetuate the office in himself; nor even that the Governor could defer signing the commission for as long a term as he chose; for that would give him the power to prolong the term of his appointee indefinitely; but that the rule in this case is, that the new term commences with the qualification—the modification of the proposition being that this qualification must not be unreasonably deferred; and we think it was not in this instance.   We consider the action of the Legislature in analogous cases, in fixing the time for the commencement of a term, as conclusive of the question in this aspect of it.