CASE No. 955.

## MACOY v. CURTIS.

1. *Quere:* If an office is forfeited by reason of failure of the officer elected to qualify within the time prescribed by law, could such forfeiture be avoided by an act of the legislature, passed after the time limited?
2. A clerk of court, elected his own successor at the general election, November 7th, 1876, gave bond, December 18th, which was approved January 1st, 1877, but he did not receive his commission until May 3d, upon which he endorsed the usual oaths June 20th, 1877. Another person was elected clerk at the general election, November 2d, 1880, and qualified and was commissioned in December following. *Held,* that the term of the first clerk was four years from the general election in November 1876, and until his successor, then elected, was qualified.
3. The commission, which is only evidence of the election, may affect the time of actual enjoyment, but it cannot affect the constitutional term of office, which is for four years from the election.

---

Original application to the Supreme Court.

The facts are stated in the opinion.

*Mr. R. A. Lynch,* for plaintiff.

*Mr. J. F. Hart,* same side.

1. The constitution requires (*Art. II.,* § 30,) that before enter-

ing upon the duties of their respective offices, all officers of the state shall take the oath therein prescribed.

It is evident that plaintiff had not *qualified* until this oath was taken.

2. The constitution further requires (*Art. III.*, §§ 17, 19,) that the governor shall commission all officers; and that all grants and commissions shall be in the name and under the seal of the state.

The commission being a constitutional requirement, would seem of necessity to constitute the essential qualification necessary to inception in office.

The case at bar is to be distinguished from a line of cases of which *State* v. *Toomer*, 7 *Rich.* 225, is perhaps the leading exponent, and which held in effect that the commission was merely evidence of the election, and that the term of the office after commission sued out, related back to the election. Those cases were decided under certain acts creating the office, which limited the term of the incumbent to an exact number of years, without containing the further provision found in Article IV., Section 27, " and until his successor is elected and qualified." They were decided *a convenienti;* no other result could have been reached, for a *hiatus* in the office would constantly have occurred whenever accident or laches prevented the successor from being qualified to enter upon the duties of the office the instant it became vacant by the expiration of the term of his predecessor.

But in this case there could be no relation back, for the office was never vacant. The same office cannot be held by two persons at one and the same time. There could be no holding by relation back, under the new title, for the tenure had never been divested under the old title until full qualification under the new title had been accomplished.

Were the old decisions forced into application to the new case, the sureties of predecessor and successor would each be liable for the acts of their respective principals during the annexed period; or the different sureties where successor and predecessor were united in the same person, would be held liable during such period.

We must recognize that the organic law from which the title

arises in this case, is essentially different from that creating the office of commissioner and Ordinary in former days. Here a vacancy can never occur in the office of clerk, by bare expiration, where there is no qualified successor at hand ready to assume it. The original term lawfully continues in all its original force and vigor until the officer under his new tenure is substituted by *qualification* following election. 4 *S. C.* 178 ; 9 *S. C.* 6 ; 25 *Ohio St.* 588 ; 19 *How.* 73 ; 17 *Cal.* 11 ; 1 *Nev.* 133 ; 9 *Penna. St.* 513.

The constitution, in reference to the office of governor, provides that he shall hold the office for two years and until his successor is " elected and qualified "—the same words as respects the office of clerk.

Mr. Justice Willard, interpreting this clause, says: "Two things are essential to perfect a present right of possession—election and installation. Election determines the right to succeed the existing incumbent *at the time and in the manner prescribed by law,* and installation establishes a present right to exercise the functions of the office." 8 *S. C.* 483 ; *Id.* 514.

If the election, without the further act of qualifying, conferred the office, how could the governor elected in 1874 *resign* the office thirty days after his successor had been elected in 1876 ? The office would not be his to resign. The *election,* and not the oath, would have made the successor the governor.

The entire scope of the opinions in the two foregoing important cases, concedes that but for the renunciation of the title acquired in 1874, by an attempted installation under a new title, Chamberlain might have successfully retained the office as governor *de jure* long after his defeat in the election of 1876, and until the governor elect had qualified under all the forms of law to receive the office.

The oath in Article II., Section 30, was all that was required to qualify the governor, as he gave no bond, &c. But in the case of the clerk, he must *first,* execute his bond, and have it approved ; *second,* subscribe to the oath in Article II., Section 30 ; *third,* receive his commission under the seal of the state, and signed by the governor ; *fourth,* and before entering upon the duties of his office, take and subscribe to a further oath, to be endorsed on his

commission, not to share the profits of his office, &c. ; and lastly, to sign the roll of county officers. *See Gen. Stat.* 174.

3. But it will be said that as predecessor and successor were united in the same person after the election of 1876, it was plaintiff's duty to immediately qualify ; that he could not prolong his coming term by neglecting to qualify, so as to cut off the existing term ; and that principles of public policy are at variance with such a right ; and that he cannot take advantage of his own laches.

The statutory provisions in force, and affecting this branch of the case, and the political *status* of the executive offices of the state government, through whom the acts of qualification were to be perfected, completely answer this argument.    *Gen. Stat.* 125 ; 15 *Stat.* 322.

By reason of the revolution through which the state government passed between November, 1876, and May, 1877, many of the officers elect, had not been able to receive commissions and to "qualify according to law," by taking the oaths required to be endorsed on the commission ; consequently, by act of May 23d, 1877, all officers elect in 1876 who had not already qualified, were allowed thirty days from that date " to qualify and enter upon the duties of their respective offices."

The plaintiff here, received his commission May 3d, 1877. He qualified under it June 20th, 1877, within the time allowed by this act.

But aside from this, there are other facts attending this branch of the case, entitled to consideration.

It was the duty of the secretary of state to *notify* plaintiff of his election in 1876 ; and after notification he had thirty days in which to qualify.    There is no evidence that he was ever notified. If not, the fault is not his.

His bond was executed December 18th, 1876, but not approved until January 1st, 1877.    It will hardly be asserted that he could have controlled an earlier approval.

Before either of these acts was accomplished, the state was undergoing a revolution.    When plaintiff's bond was executed and approved, Chamberlain and his secretary of state held the executive offices of the state and its great seal, without which no commission could issue, and the rightful governor and secretary

were excluded from their offices in the state-house and the election returns and certificates therein, by an armed force. Circumstances entirely beyond his control prevented an earlier qualification. If he was guilty of any laches, it was only that he did not apply for a *mandamus* against the governor and R. M. Sims, as secretary of state, (the title of the latter to the office being still in dispute,) to issue his commission under seal.

*Messrs. J. J. Hemphill,* and *T. C. Gaston,* contra.

January 10th, 1880. The opinion of the court was delivered by

McGowan, A. J. This is a case in the original jurisdiction of this court, submitted upon an agreed statement of facts, under the provisions of Section 389 of the code of procedure. · At the general election, November 2d, 1880, George W. Curtis was elected clerk of the Court of Common Pleas and General Sessions for Chester county, gave bond November 27th, and was commissioned clerk December, 1880, for four years. On December 4th, 1880, he took the special statutory oaths in such cases provided, and on the same day signed the roll of county officers and demanded possession of said office. His predecessor in the office, C. C. Macoy, refused to deliver possession, upon the allegation that his term of office had not expired. Whereupon the said Curtis took possession of the office, and this is an action in the nature of a *quo warranto*, instituted by the said C. C. Macoy to recover possession of the said office of clerk.

His claim is as follows : At the general election, held October 16th, 1872, the plaintiff, C. C. Macoy, was elected clerk of the court for Chester county, and on November 22d, 1872, gave bond, qualified and received his commission. At the general election, November 7th, 1876, he was again elected his own successor. His second bond bears date December 18th, 1876, and was approved by the board of county commissioners January 1st, 1877 ; but on account of confusion in the government of the state, which existed at that time, his commission was not issued until May 3d, 1877. The usual oaths endorsed on the commission bear date as late as June 20th, 1877. Under these circumstances the question propounded for decision by the court, is this :

" Has the term of office of C. C. Macoy, as clerk of the Court of Common Pleas and General Sessions for Chester county, expired? If that question is decided in the negative, it is agreed that judgment be given for C. C. Macoy for the possession of said office; and if in the affirmative, that judgment be given for George W. Curtis for the possession of said office."

The constitution of the state (*Art. IV.*, § 27,) provides that "there shall be elected in each county, by the electors thereof, one clerk for the Court of Common Pleas, who shall hold his office for the term of four years, and until his successor shall be elected and qualified."

Article XIV., Section 10, further provides " that the election of all state officers shall take place at the same time as is provided for that of members of the general assembly, and the election for those officers whose term of service is for four years shall be held at the time of each alternate general election."

The act of March, 1874, provides " that the next general election shall be held pursuant to the provisions of the amendment to Article II., Section 2, of the constitution of the State of South Carolina, on the Tuesday following the first Monday in November, 1874, and forever thereafter, on the first Tuesday following the first Monday in November in every second year," &c.

The construction placed upon these provisions by those who framed the constitution and enacted the laws to carry it into effect was, that the term of county officers—including that of the clerk of the court, like that of state officers—was a fixed and unshifting period. This is shown by the act of 1870, (*Gen. Stat.* 38); act of 1877, (16 *Stat.* 230); and act of 1878: " To provide for the *filling of vacancies* of county offices, and to regulate the holding of elections therefor." 16 *Stat.* 507. These acts, giving the governor the right *to fill a vacancy for an unexpired term of a former incumbent,* and in providing that the person so appointed and elected, " shall hold his office until the next general election and until his successor shall qualify," &c., are manifestly based upon the view that the term of county offices was from one general election to another, with the possibility of unexpired terms. Under this construction, making the general elections the commencement of the terms of all offices, state and

county, the question in this case could never have arisen. But the case of *Wright* v. *Charles*, 4 *S. C.* 178, judicially interpreting the constitution, declared a different construction and authoritatively determined that there can be no unexpired term in the office of clerk, but that each incumbent is entitled to hold the office for four years, whether elected at a general election or at a special election at some intermediate time. From this decision it follows that the term being four years, and not necessarily commencing at a general election, the end must depend upon the time it legally commenced to run.

The plaintiff, C. C. Macoy, claims possession of the office in controversy upon the allegation that being clerk in 1876, at the general election of that year he was elected his own successor, but, prevented by well known circumstances, he did not receive his commission under that election until May 3d, 1877. He held and enjoyed the office from the general election in 1876 until May, 1877, but as up to that time he had no commission under the new election, he claims that he was holding under the supplemental authority of his term of 1872, which gave him the right to hold " until his successor should be elected and qualified," and that, being his own successor, he cannot be considered to have been " elected and qualified " before he received his commission in May, 1877; and starting at that point, four years carries his term to May, 1881. The defendant, George W. Curtis, who was elected at the general election in 1880, and who is qualified and commissioned and in possession of the office, denies the claim, insisting that the right of the plaintiff to hold the office ceased as soon as he, his successor, was elected and qualified, and that he should not be disturbed in the possession of the office.

In the first place the defendant insists that the plaintiff never, in fact, was entitled to a term under the election of 1876 ; that he did not legally qualify under that election—the consequence being a forfeiture of the office—under the act of 1873, and that during all the time after 1876 he was holding the office under the supplemental authority of the term of 1872, and of course the moment his successor was elected and qualified he was entitled to the office. The act of 1873 (15 *Stat.* 322), declares " that it shall be the duty of every state and county officer

elected by the people to qualify within thirty days after receiving official notification thereof, and upon the filing of such bond and qualifying according to law, he shall enter upon the duties of said office.  *  *  *  If any officer elected by the people shall fail to qualify and enter upon the duties of his office, as required by the provisions of this act, he shall forfeit the office to which he shall have been elected, and the governor is hereby authorized to order an election to be holden within ninety days to fill the vacancy." , 15 *Stat.* 322.

If the plaintiff did not, as he insists, qualify and enter upon the duties of his office until May 3d, 1877, his office was then forfeited, unless that forfeiture was cured by the act of May 23d, 1877, which provides " that all county officers elected at the last general election *who have not qualified,* be and they are hereby allowed thirty days from and after the passage of this act to qualify and enter upon the duties of their respective offices," &c. 16 *Stat.* 224.

It may be as alleged, that the *onus* is upon the plaintiff, and he must recover, if at all, upon the strength of his title which he has himself put in issue in a judicial proceeding ; yet the court will always hesitate to declare a forfeiture, except in a proceeding instituted expressly for that purpose, and especially in a case where the alleged forfeiture was the result of extraordinary events and involving no personal blame.   From the view which the court takes, it will not be necessary to consider what effect the act of 1877, called the validating act, which was passed after the expiration of the thirty days allowed before forfeiture, could have in dispensing the alleged forfeiture declared by the act of 1873.   According to our view, the plaintiff was not one of those who needed further time to qualify, and as he was not liable to forfeiture, the last act was not applicable to him.

Assuming, then, that the plaintiff did have a term under the election of 1876, the defendant further insists that the term had expired before the defendant was elected and qualified.   The precise question involved is as to the time when the last term of the plaintiff commenced to run ; the election, the qualification or the date of the commission.

The following sections of the constitution and provisions of law are referred to :

Article II., Section '30, of the constitution requires "that before entering upon the duties of their respective offices all officers of the state shall take the oath therein prescribed."

Article III., Section 17, requires that the "governor shall commission all officers, and that all grants and commissions shall be in the name and under the seal of the state."

"Every clerk, before entering upon the duties of his office, in addition to the oath required by the constitution for persons chosen or appointed to any office of profit or trust, shall take the oath, [not to share profits], which said oaths shall be endorsed on the commission. * * * That the clerks, before receiving their commissions, shall enter into bond, to be approved by the county commissioners." *Gen. Stat.* 174.

"No executive, judicial or other officer elected to any office shall be entitled to receive any pay * * * until he shall have been duly commissioned and qualified." *Gen. Stat.* 125.

The facts are, that the plaintiff being clerk, was re-elected at the general election in November, 1876. He executed bond December 18th, which was approved January 1st, 1877, and, as his attorney says, "presumably forwarded with the constitutional oath." There was no difficulty in his way as to the oath, and in the absence of statement to the contrary, we assume that he took the oath when he forwarded the bond. Then he was in possession of the office, and had done everything the law had required of him, except receive his commission with endorsements, which, at the time, had not been issued. *On January 1st,* 1877, after he had been elected, had given bond, taken the constitutional oath, and was in possession of the office, was not the plaintiff, in fact and in law, clerk of the court under the election of 1876, even without his new commission?

To have the full possession and emoluments of his office, several things were made pre-requisites—*election, bond, qualification* and *commission.* Is it reasonable that the performance of all of these, except the last, should have no effect whatever in clothing him with the office, and that even his right to it and its tenures should be made to depend upon the single fact of his receiving a commission which, but the incident of what had gone before and not the act of the electors, but his own, might be prevented by accident or omitted by design? So far as election,

bond and constitutional oath were concerned, he was then elected and qualified. Nothing remained to be done but to receive his commission. That was more than four years ago, and if he was then clerk, elected and qualified, his term has expired and he is not now entitled to the office.

But if the plaintiff was not then clerk *de jure* under the election of 1876, for lack of his commission, he certainly was clerk after he received his commission, which, when issued without regard to its date, had reference back to the election. We do not understand that the provision in the constitution makes short terms and long terms—some four years and some more than four years, depending upon the time the incumbent may happen to hold over, but the terms of four years only, succeeding each other according to the calendar, the words, "and until his successor shall be elected and qualified," being added merely to prevent a chasm in the discharge of the duties of the office, and amount to no more than an authorized occupation of so much of the succeeding term. Such, of necessity, is the construction in its application to all that class of offices, the term of which runs from one general election to another, as, for example, that of governor. Such is the meaning of the whole provision taken together, and its enforcement is necessary to preserve order and symmetry. In our government certainly the election is the origin and foundation of the right to all elective offices. This would seem to be the correct view from principle, and we also regard it well settled by authority of this state, that neither the existence of an office nor the term of time for which it exists, depends upon the commission, which is only evidence of the appointment or election. *State* v. *Billy*, 2 *N. & McC.* 356 ; *State* v. *Jeter*, 1 *McC.* 233; *State* v. *Lyles*, *Id.* 239 ; *Kottman* v. *Ayer*, 3 *Strob.* 92 ; *State* v. *Toomer*, 7 *Rich.* 227 ; *Ex parte Smith*, 8 *S. C.* 515.

It is said in the case of Jeter that the " tenure by which an office is held does not depend upon the commission which the governor may think proper to give; it is only evidence of the appointment. The tenure must depend upon the act creating the office or upon the constitution."

In the case of Lyles, the court decides that " the commission

does not confer the office, it is only evidence of it, and cannot change the term by which the constitution declares it shall be held. As soon as an Ordinary is elected he is an officer under the constitution, and entitled to all the rights and immunities conferred by that instrument."

In the case of Ex parte Smith, Judge McIver says: "It is very obvious in a government like ours, where the people are the source of all powers, that the title to all elective offices depends upon and is derived from the election, the choice of the people, as manifested at the ballot-box."

The case of State v. Toomer was strikingly analogous, and, in some respects, stronger than this. Henry R. Laurens was master in equity for Charleston county, and was re-elected in *December*, 1844. He executed his bond December 3d, which was approved December 24th, 1844, but his commission did not issue until May 7th, 1845, and it was without seal and had endorsed on it only the constitutional oath. The term of office was "for four years and until his successor was elected and qualified." The act of 1840 required a master in equity *within three weeks after* his election to tender his bond, duly executed, and immediately after it has been approved shall *sue out his commission;* and upon his neglect or failure to do so within the said time, his office shall be deemed absolutely vacant, &c. Notwithstanding these stringent provisions and the failure of Mr. Laurens to sue out his commission within the time, his sureties were held liable for a default under the bond of 1844, the court declaring that the statutory provisions prescribing the manner of executing the bond, suing out commission or taking the oath of office, *were merely directory.* Judge Munro, as the organ of a unanimous court, says: "The only efficacy imparted to the official title of an officer elect by a strict compliance with the directions of the law, such as giving bond, suing out his commission, taking the oath of office, &c., within the prescribed times, is to protect the title against forfeiture. If the state sees proper to excuse his delinquency by granting him a commission, the defects in his title are cured, *and if he be already in office his title ' de facto ' is immediately converted into a title ' de jure,' having relation back to the time of his election."*

It has been held in New Hampshire: " On general principles, the choice of a person to fill an office constitutes the essence of his appointment. * * * After the choice, if there be a commission or an oath of office, or any ceremony or inauguration, these are forms only, which may or may not be necessary to the validity of any acts under the appointment, according as usage or positive statutes may or may not render them indispensable." *Johnston* v. *Wilson*, 2 *N. H.* 202.

It is true that the constitution makes it the duty of the governor to issue a commission, which seems to be necessary to put the officer into full practical possession of his office. One elected clerk is not to enter upon the duties of his office or receive its emoluments until he is commissioned. It has been held that before there can be such vacancy, by the death of a person elected to office, as to require it to be filled by executive appointment, the person elected must have been qualified and entered upon the duties thereof. *Commonwealth* v. *Hanley, Brightly's Lead. Cas. on Elections* 675. But whilst the commission may be a formal pre-requisite to enable one out of possession to obtain it, we do not see how that necessarily affects the term—the time the office has to run. Actual enjoyment may not be identical with the term, which is a creature of the law and cannot be set afloat and made to vary, shift or change, according to the caprice, interest or laches of any one who may happen to be incumbent. As illustrated by this case: Should the beginning of the second term be pushed up because there was no commission to May, 1877, the result would be that the election for clerk of the court for the county of Chester would be thrown out of regular connection with all other elections in the state, and possibly a special act of the legislature every four years would be necessary.

If the suing out the commission is, in one sense, a condition precedent to full enjoyment, it certainly does not create the office—for by the terms of the very law which creates the obstacle as to enjoyment the existence of the office is assumed. The abstract right is recognized as a matter prior to and independent of the commission. " *No officer elected to any office* shall receive pay until he shall have been commissioned and qualified." The

industry and research of the counsel for the plaintiff found a case in which it is contended that a different doctrine was held. *Brodie* v. *Campbell,* 17 *Cal.* 21. In that case Judge Norton, of the twelfth judicial district of California, held his office for six years under an appointment of the governor, "and until the election and qualification of his successor." He was elected September 6th, 1854, *and January 2d,* 1855, *took the oath of office and was commissioned.* At a general election, September 7th, 1859, Brodie was elected his successor, but the governor refused to commission him as prematurely elected. At a general election, November 6th, 1860, Campbell was elected and commissioned. The controversy was between Brodie and Campbell, who was the judge, and that was made to depend upon the question whether 1859 or 1860 was the proper time to elect a successor to Judge Norton. If Norton's term ran from his election, 1859 was the proper time and Brodie was judge. If it ran from the time he qualified and was commissioned, 1860 was the proper time and Campbell was judge. The court held that Norton's full term ran from January 2d, 1855, when he was qualified and commissioned and gave judgment for Campbell. This case does touch the principle involved here, but it is, in several respects, quite different from the case at bar. There the judge elect was not required to give bond and had not taken the constitutional oath. He had done nothing whatever towards perfecting his title before January 2d, 1855, when he took the constitutional oath and was commissioned. It is stated that there was no unusual delay, *January* being the time fixed by the legislation of the state for the commencement of the terms of district judges. Strong as the facts were, Judges Baldwin and Cope, whilst they concurred with Chief Justice Field, who delivered the judgment of the court, filed a separate opinion, which states: "We do not mean to say that a person appointed to a vacancy may delay to qualify as long as he chooses and then fix his regular term from the act of qualification, for that would be to perpetuate the office in himself; nor even that the governor could defer signing the commission for as long a time as he chose, for that would give him the power to

prolong the term of his appointee indefinitely ; but that the rule in this case is that the new term commences with *the qualification ; the modification of the proposition being that this qualification must not be unreasonably deferred.*" But if the case were in all respects analogous to this, the judgment could only influence us so far as the argument and the dignity of the court which pronounced it are entitled to our consideration and respect. Our own cases are binding upon us as authority and we conceive are in accord with reason and the analogies of the law of our republican institutions and system of popular elections.

The question propounded in the case, whether the term of office of C. C. Macoy, as clerk of the court for Chester county, has expired, is answered in the affirmative, and it is therefore ordered that judgment be rendered in favor of George W. Curtis, the defendant.

SIMPSON, C. J., and McIVER, A. J., concurred.